The next argument is in Appeal 1524 from 2009, Dow Jones v. Ablaise LTD. key was to make webpages more usable for the person accessing them. That's exactly what this is all doing, isn't it? Yes, it is, but that's really an expression of a desired result. I mean, here we dispute, and there's a dispute in the expert testimony whether this is a predictable combination of known elements. Our position is there was no format ID in the prior art. So there's not a known element that you're combining. This is a new realization of a new way to treat content in a client-server environment. Just ask them what they want? Why is that so new? Nobody had done it. There was skepticism at the time. People were working on it and did not arrive at that solution. What's deficient about Judge Robertson's opinion at 149 of the Joint Appendix, page 22 of his opinion, where he quotes Dr. Bestavros' testimony in the paragraph at the top of page 22? What's deficient about that as a foundation of motivation to use these well-known location tags in the web environment? On summary judgment, certainly there is a dispute between the experts. So even if Mr. Bestavros' testimony supported the proposition, it's the subject of a dispute, and on summary judgment that should not be resolved. That should be submitted to a faculty. Well, it can't be that any time one expert contradicts another that summary judgment is altogether blocked. It has to be that there's a genuine dispute, not just any old dispute, a genuine dispute. So I take it that Judge Robertson, who discusses Mulligan's contrary testimony in some detail, felt that there wasn't a genuine dispute, even though there was some contradiction by Mulligan of some of what Bestavros had said. Right, and we submit that's an error. Judge Robertson did find, in considering the Reisberg or Reuters patent, that Mr. Mulligan, the Blazes expert, had pointed out problems in bringing formatting control to a web environment because of stateless connections, bandwidth limitations, latency communications, other problems. In recognizing the validity of Mulligan's point with respect to the Reisberg patent, it's inappropriate to then discount that testimony and that dispute with respect to the Bobo patent. So there is a dispute about whether it was easy and understood and whether it was a predictable combination of known elements. And I'll reiterate, Blazes' position is the format ID was completely unknown in the prior art. I'm looking at figure 8 of the patent, and it has line 6, 8, 13, 16, the align middle. That's exactly what you're talking about as location, right? Correct. But there is, in the HTML tags, a specific align middle tag, which just corresponds precisely with what the invention is claiming here. Absolutely. We don't dispute that formatting data in the form of location tags was known in HTML. There were web pages that used the image align attribute. What we dispute is that there was a format ID, which is something the server used to receive a request from the client for location of content and to dictate then the location of content that's returned. But Bobo had already brought the formatting control into the online environment, right? There's a fact dispute about that as well, Your Honor. And Bobo himself, in describing what he does... But that's what Bobo is claiming. He's claiming that you can control the text, the size, the listing, everything but the location. And we just went over how location is in the HTML tag. But what Bobo described and claimed is that you could request different content. You could get a listing or you could get an image or you could get a reduced image. But what you cannot do in Bobo is for any given content, request that that content be moved to a different location on the page. And that is fundamentally different. By the way, did you at any point do that in your 737? I see aligning things. I never see moving the first paragraph to the end or the end to the top. Your question is directed to the description in the patent? I am. It will actually be an enablement issue if you're trying to say that location is more than just aligning as you seem to... I do think it is more than aligning. There is, of course, no enablement issue before the court right now. I do understand that. But you kind of brought this up by suggesting that you could move things wholesale back and forth, which I don't see supported in the patent at all. A couple of points. It's not on the record here, but just to demonstrate to the court, there is some support for it in column 12 of the 737 patent at lines 6 to 9. There is a statement that subsequent coding specifies the location of the icon within the page so as to complete its overall formatting requirements. That is a reference to the image align and headspace attributes that you just pointed out, Your Honor. But it doesn't limit it to alignment left-right. There is another statement in column 14 at line... But you're not telling anybody how to do that. That was a little bit tough in 1995, wasn't it? Well, the patent does, in fact, describe an embodiment where you can use HTML strings with formatting tags to move content around. And as Dow has contended, the use of location tags in HTML was known. People knew how to use tags in HTML to move content. What they didn't know how to do was let it be locally controlled based on requests from the client to the server. And that's the problem that the Ablaze Inventors solved. Do you want to save some rebuttal time? Yes, sir. Thank you. Thank you. Mr. Lieberman. Chief Judge Michel, and may it please the Court. We heard Mr. Holdreth a couple of times in tone that there was simply no format identifier in Bobo. Well, how is it disclosed in Bobo? The format identifier, we have to go back to the definition that Judge Robertson gave to that term in claim construction, and the claim construction ruling is not challenged by either party. The definition of a format identifier, and this is at page 233 of the record, is that a format identifier, I'm sorry, Your Honor, it's 231 of the record. A format identifier has two purposes. The first purpose is to identify the type of formatting required, which the judge separately defined, and the second was to select a set of stored computer code. As to that first requirement, type of formatting required, Judge Robertson construed that term to mean the layout or the presentation of the text or the graphics on a page. The layout, which is location, presentation, which includes such things as bolding, highlighting, etc. There's no dispute that as to the type of formatting, that's disclosed by Bobo. That was found by Judge Robertson when he said that Bobo controlled the presentation of content. The second element, having to do with selecting functions, Ablaze never contested that Bobo doesn't disclose that. So the question boils down to not whether there's a format identifier in Bobo, but whether or not there is the type of formatting which specifies location. Judge Robertson construed type of formatting which specifies location to mean HTML tags. And that's the area where he identified there being a narrow gap. He said that there were HTML tags that affected location but did not specify location. And the tags that he was referring to, as Judge Rader correctly pointed out, were these image tags. And the fact that in Bobo it was not expressly disclosed that you could have a line middle right next to the image tag. But the undisputed evidence, that is a point as to which the experts did not disagree at all, is that a line middle was known. It was known to a person of skill in the art. We have a sort of HTML for dummies from that time period that discloses that. But isn't your problem that we have summary judgment here? You're getting into issues of fact as to whether there are motivations to present to the user certain options and whether that was well known, whether it was being pursued. Being pursued is kind of amorphous, factual. The answer to your question, Your Honor, is no, and it's no for two reasons. First, Judge Robertson, as to this point, and I would submit as to every point on which he ruled, relied only on factual issues, on either admissions that were made by one party or the other, the statement of undisputed facts, and we cite that throughout our brief. Judge Robertson relied on the statements of undisputed facts heavily, admissions by their experts, or statements by our expert that were not contradicted in any way. And the blaze can't point to any circumstance where Judge Robertson said, I believe the Dow Jones expert and I disbelieve the blaze expert. But he did draw inferences. For example, on page 21 of his opinion, after talking about how alignment tags like align equals middle were well known, but then in the next sentence he goes on and says, quote, therefore a person of ordinary skill in the art would simply have to add an alignment tag to the existing image tag in the Bobo patent to meet all of claim one's limitations, period, end quote. So he's drawing an inference from a fact, and maybe the facts aren't contested, but the inference isn't conceded, and the inference looks like the kind of fact-finding that ordinarily we expect to be done by fact-finders at trial. Your Honor, here's why I believe that's not correct. If you look at the 737 patent itself, in figure 8, it has an align middle tag there right next to the image tag. This was not a blaze's invention. It was well known in the prior art, and the experts admitted to this, and it's in the Statement of Undisputed Facts, that when you're using an image tag, it is standard to have an alignment tag with that, so that your text would be aligned either at the top, at the middle, or at the bottom. So that's one answer. The second reason why he drew no inference here, well, that's the simple answer to your question, Your Honor. As to the question that was asked by Judge Rader just a moment ago about whether there was an error with respect to relying on our evidence when there was a dispute, is on anticipation, which is an easier way, an alternate way, but an easier way, I would submit, to get to a finding of invalidity with respect to Bobo. Judge Robertson overlooked the fact that there's a paragraph tag, a P tag in Bobo. The undisputed evidence there is that a paragraph tag, a P tag, changes location. That is, it moves text from here. With no paragraph tag in Bobo, you would have the text to the right of the image, but with a paragraph tag it's moved to below the image. It was in Bobo itself. That provides the missing element, that narrow gap, Judge Folsom, with respect to the formatting data that specifies location. The P tag in Bobo is there. It does specify location. So, for example, if you took the P tag on one line of Bobo and you actually moved it to just above the image, that would be moving the image down. You put two of them there, it moves it down to the middle. Three of them, it moves it down to the bottom. It's all in the Bobo reference. And, again, the statement of undisputed facts at 12 and 13, and I believe 4 and 5, show what was admitted as to what was known in the art. Mr. Lieberman, you may be even more vulnerable on the jurisdiction point. I understand you're relying heavily on Metamune to say there's jurisdiction, but Metamune was dealing with a pre-existing license, whereas this is an offer to settle the very suit which is ongoing. Why doesn't that difference suggest that the court erred in retaining jurisdiction? Actually, Your Honor, your question has within it the seed of the reason why there was still subject matter jurisdiction. This was not an offer to put an end to the suit. As Judge Robertson noted, this case was going forward anyway. You have the 737 patent that was going forward anyway. It has an identical specification. We deal with the patents separately, and on the 530, why is there jurisdiction? Under the Metamune case, a totality of the circumstances test. Let me start one step back. First, we know from the Fort James case, and we know from the Benetech case, that simply giving a covenant not to sue does not divest the court of subject matter jurisdiction. There are circumstances under which it doesn't. For example, if the covenant is in some way deficient, as it was in the Aspects of Revolution IWARE case, which this court decided recently. Well, that's not here. Or if it was given, well, we submit that the covenant was deficient, and that's one of the two reasons why it was appropriated. What's deficient about it? All the parties are bound, and it disposes of the 530. Well, in this case, Ablaze had brought into the case, not as a named accused infringer, but had brought into the case. Isn't that an important point? Not as a named accused infringer? Well, it's one of the factors that a district court judge. Your Honor, if I might, and I want to quote language that Judge Michelle used in the Supersat decision that he had written in, which is a case that's principally relied on by Ablaze. You correctly pointed out, Judge Michelle, that subject matter jurisdiction is an issue of law. It's reviewed for clear error. But you said that the district court's view of the legal effect of the fact pattern before it is not, however, to be lightly disregarded. Why? Because we know that district court judges understand better than an appellate court can, by looking at the record, the particular facts and circumstances that led to this conclusion. So, for example, here, we had a litigation that had gone on for three and a half years. It was going on on the 737 patent. Nevertheless, Judge Robertson concluded that based on what Ablaze had said and how it said it, that it was sending a very clear signal that it was going to assert the 530 patent in the future against Dow Jones' parents if it could do so. The judge said that in his opinion. He said that in the oral argument transcript. And if that happens, we'll deal with it when it happens. But why would you assert jurisdiction where there is none? Well, you say where there is none. I submit that there is. And here's why. We know that there's no firm rule that when you give a covenant not to sue, even one which is not flawed. You mean like you're protecting the parent company right now, which you, by your own words, said, we don't represent. We don't have anything to do with them. And yet, if this gets you out of the case, why are you so vigorous in defending them? It may, Your Honor, not only protect the parent company, it may protect the nine other defendants who have been sued on the 530 patent. It may protect the judicial system. Because here we have a situation in which Dow Jones spent. Even if all of those goals would be advanced by asserting jurisdiction, if there isn't standing, there isn't jurisdiction, and it doesn't matter what the benefits would be, a court may not reach the merit. That's correct, Your Honor. But going back to the point I was making a moment ago, there is no firm rule that when you give a covenant not to sue, that by itself divests the court necessarily of subject matter jurisdiction. Some people would say there is a firm rule that provided that it's a sufficient covenant, it always does divest except if there's already a verdict of non-infringement. One exception. Okay. The Fort James case was a case that involved a jury finding of non-infringement. The Benetech case, when taught this, is the majority. We're not talking about Judge Dyke's dissent in that case. But in the majority, the majority sort of expanded Fort James, not by holding, but I would say by dictum, saying before the ultimate issue has been considered by the court or decided, a covenant not to sue divests this court, divests the court of jurisdiction. So we now have at least dictum, which gets you to the district court considering the issue. Judge Robertson, I'm sorry. I'm sorry. I'm interrupting your question. What Judge Robertson quite properly did is looked at the metamune case, which said bright line tests in the patent area are things that need to be looked at carefully, and what you ought to be doing is applying a totality of the circumstances case. And he said, I am not going to apply Benetech literally the same way the court in, I believe it was Benetech, although it may have been Aspects Eyewear, said I'm not going to apply SuperSAC literally or formalistically. The court said, what's the difference between the issue being considered by the court and the matter having been litigated at the cost of millions of dollars for three years, and then just before, if I may, without jinxing my case, I say a virtually slam-dunk summary judgment motion is going to be filed on anticipation with respect to the 530 patent. They just give it up. But they can then sue other people later. The district court judge said, applying the totality of the circumstances case, I'm moving it back the other day. And those other people will have the same arguments, won't they? They'll have the same slam-dunk summary judgment motion that you made. They might, Your Honor. But when can they present it? In many courts, they won't get a chance to present that motion until the end of all of discovery. They will have had to have gone through the entire case. Many courts are front-loading claim construction issues. Summary judgment is often deferred by district courts until the end of a case. You may get the 530 patent litigated a dozen times. Each time. You're so concerned about these others. You have to agree that judicial efficiency can't provide jurisdiction where it doesn't exist. So the real issue is does jurisdiction exist here or not. That turns on standing. When you have an admittedly sufficient covenant involving the only party in the lawsuit, it's hard to see how there's any standing. Your Honor, here again we go back to the issue of MedImmune saying look at the totality of the circumstances to see whether you have a live dispute. Do you agree that there was not a substantial controversy involving Newscorp at the time this deck action was filed? Do you admit that? At the time the deck action was filed. They didn't join in it. That's correct. So it's my understanding you basically rely on the prayer, the discovery request, the motion to dismiss being filed late in the proceedings. But Newscorp, you took the position the appellate was not entitled to discovery. You're sort of wanting the best of both worlds in this argument. Are you not to now say that Newscorp? No, Your Honor. What we are trying to do is we're trying to explore the issue as to whether or not there's a live actual controversy. There were five or six different ways that a blaze sought to bring Newscorp into this case. In the language and its answer and counterplay. But they never joined in the case. They never sought to intervene. No, they didn't. But again, this is a case where a district court judge chose to move forward with a patent that had an identical specification with one that was going to be litigated anyway. It's not a case where a district court judge said, you know, I'm not going to hear this. And you then reverse. This is a case where the district court judge took on the work, chose to take on the work, did the work, issued his ruling. And the question is, was there an error as a matter of law that there was no subject matter jurisdiction? There could be, in certain cases, subject matter jurisdiction. And a district court judge could quite appropriately say, even though there's subject matter jurisdiction, I am going to decline to continue to entertain the summary judgment motion. But what you would have to do here, Your Honors, in order to reverse this subject matter jurisdiction issue, is to hold that in every case where there is a potentially deficient covenant not to sue, which we believe there is here because of the involvement of Newscorp. I've got to stop you there because this is bothering me hugely. You keep talking about the involvement of Newscorp, and you keep saying they tried to involve Newscorp. As far as I can tell, Newscorp is not in this case at all for any purpose. They're not a party. They didn't seek to intervene. They weren't sued. They didn't sue. They're not in this case. The fact that they may make arguments in discovery requests or in briefs doesn't get them in the case. There's no judicial stopple here. There's nothing where the judge adopted some position they argued. So I don't see how you have a serious argument that Newscorp somehow is in this case. You're the one bringing up Newscorp. Your Honor, as to Newscorp, that is one of two independently sufficient grounds for finding that there's continuing subject matter jurisdiction here. One is what we believe is the flawed covenant. I respectfully disagree with your argument on this point. But I would direct you to the second prompt, which is that it has to do with the timing issue. It is a short extension of the Benetech majority ruling, well supported by the reasoning of Judge Dyke and his dissent as to why there isn't necessarily a firm, bright line after the Benetech case. Judge Dyke talks about a future suit against the same party. We're talking about a different court. Let me read from Benetech. Fort James does not compel jurisdiction here. The instance setting is different because no trial of infringement has taken place. That's a pretty bright line. It's also a decision, Your Honor. It's a pretty bright line. It is a bright line, but for the reasons that Judge Dyke articulated in the Benetech case. And I understand you're reading from the majority opinion in which you joined, I believe. But what's clear from the Benetech case and what's clear from Fort James is that even when you have a perfect covenant, merely giving the covenant doesn't mean there's no subject matter jurisdiction. That is, if it's late enough in the case, there may still be continuing jurisdiction. You argue that the 530 is going to be litigated anyway.  The 737, Your Honor. Well, you say they're going to go on and sue these other nine people. How do you know they won't offer them a covenant not to sue, too? You don't. Your Honor, they could. They could. They could, in theory, drop the 530 patent. So on suppositions, you ask us to assert jurisdiction. Jurisdiction is not based on suppositions. No, Your Honor. Judge Robertson, the district court judge who had this case, who also had one other case involving the 530 patent in front of him, looked at that as one of the factors, as one of the factors, Your Honor, if in the other case before Judge Robertson, a blaze said, you know, we're not going to continue with the 530 patent in this case either. And, in fact, we're not going to continue with it in other cases. At that point, Judge Robertson, doing a meta-immune analysis of the totality of circumstances, could then conclude there is no longer an actual life controversy. But those were not the facts. Here, Your Honor. So you're basically saying because there's language in Benetech that says consideration or decision, that fortune should be understood to apply, for example, if there's been a Markman hearing. People spent a lot of money, a lot of time, a lot of trouble. Markman hearings have been held. So, as I understand your argument, that would provide jurisdiction in the face of a sufficient covenant not to sue. Not necessarily. But that's precisely the point when the settlement will happen. That's precisely the point when they will offer the settlement, is after they've seen the Markman and after they've invested a little to find their positions. It could well be at that point, Your Honor, but it isn't necessarily at that point. And I would suggest that given this Court's language in Supersac about not lightly disregarding the way a district court would characterize the facts regarding whether there's a life controversy, the fact that the Supreme Court has told this Court not to apply a bright-line test, and Fort James really is a bright-line test, that you want to allow the district court judge in any particular case to look at all the facts and circumstances in deciding whether or not there's a life controversy. In some cases, it may be that after a Markman ruling, there will be no subject matter jurisdiction if a covenant is given after that. In some cases, there will be. But that's the sort of thing that you should be leaving to the district court judge in the first instance to address and to analyze all of the factors as Judge Robertson did cogently. This is subject matter jurisdiction. Yes, it is. We're talking about the authority of the Court to act, and it's supposed to be subject to fuzzy questions of who's doing what at what time and when, and what is the impact of this potentially in the future based on assumptions, and parties that aren't even part of the suit but may have been mentioned in discovery. Those are supposed to be the determining factors for jurisdiction? They're supposed to be factors that the district court is permitted to consider, Your Honor. Right now, if Fort James were to be applied literally, we have a bright-line test that a covenant given after an infringement verdict, a non-infringement verdict, does not divest the district court of subject matter jurisdiction, but one before does. So the question is, why is that the case? Why do we have the bright-line drawn there? And at the same time, we have the Supreme Court saying bright-line tests specific to the patent law are disfavored. So the question is, do you leave the bright-line there? Do you draw the bright-line somewhere else, maybe adopting the dictum of the Benetech case? And it's actually language that Ablaze has embraced about whether or not the court has considered but not necessarily ruled on the underlying issue. Or do you forego a bright-line test and allow the district court, which is in a position to see what's actually going on and how this is going to affect that court's work and the work of other courts throughout the judicial system,  If a district court has decided a lot of discovery disputes, has it considered the lawsuit for purposes of your argument? Your Honor, I'm not the district court judge making the ruling in that case. I would say probably that's not enough. Probably that's not enough. But here Judge Robertson Well, what is enough? Summary judgment motions have been filed? Well, let me give you an example. In this particular case, Your Honor, in this particular case, during the oral argument on the motion to dismiss, Judge Robertson turned to counsel for Ablaze and said, Why are you dropping the 530 patent? And they refused to give him an answer. They said, We're a product. We're not going to tell you. It was very clear to Judge Robertson, and he makes it, I think, clear in the language he uses in his decision, that he knows that they have decided that that 530 patent is dead. Look, his assumption about what they're going to do or not do in pending cases or future cases that may later pen is no foundation for jurisdiction. I can make guesses about what might happen to 530 patent in the future or not, and so can everybody else. But you can't found jurisdiction on guesses even made by district judges.  There were, at that time, and I believe still today, nine live pending district court litigations in which the 530 patent had been asserted by Ablaze. No guess, no speculation. But none of them involving News Corp. Is that correct? None of those involving News Corp. That is correct. That is correct. So the speculation would be that Ablaze would change its strategy in the future. So the question here really is, does the court want to stick with the bright line test from Fort James? Does the court want to establish a different bright line, as the language in Benetech suggests? Or does the court want to give some authority to the district court to make these subtle determinations that go into the legal question of whether or not they're subject matter jurisdiction, which is reviewed as a matter of law by this court? All right. We've given you lots of extra time. Let's hear a rebuttal now. Thank you, Your Honor. Thank you, Your Honor. I'd like to just briefly address the format ID limitation. Yeah, I'd like for you to address, obviously, a doubt, exposition, that Judge Robertson's claim construction resolved this issue. So I would like for you to particularly respond to that. Thank you, Your Honor. I do think that is the important question. And I'd like to point out that in the joint appendix at page 550, we've put into the record what Dow's experts said the correct claim construction is. And we agree with it. It's that the format ID has to dictate the layout of the newspaper. So there's really no dispute that the construction that Dow embraced, the district court employed, is format ID dictates the location. And I think Judge Robertson employed that as well. And you can see it in his opinion in the joint appendix at 141 where the judge says, in the 737 patent, the format, if I can just flip to the page, the format identifier has to identify the type of formatting required. The claim language requires that the format identifier specify or dictate, as Dr. Bistrovich puts it, the layout of content on the page. So it's a red herring when counsel talks about formatting data. There's no dispute that everybody knew there were tags that you could use in an HTML document to locate content on the page. What was missing and what was overlooked in the Bobo analysis is the format ID received from the client that dictates the location of the content. And it's a little bit of a shell game. The district court had no guidance from Dow on this because Dow never argued that you could combine Bobo with the image align tag. So that's the important point about formatting data. I'd like to just point out that in Bobo, the specification itself makes clear the real functioning of Bobo. And the citation is the joint appendix at page 252. It's column 8. It starts at line 31. And Bobo says, The preferences on how the MSDS, that's the server, is configured for the user include options on how the messages are reviewed. With facsimile messages, for instance, the user can vary the amount or the type of information that will be supplied with the listing of the fax messages by selecting an appropriate option. So it's not the location. It's the content. You can request different content. I'd like to address just briefly the jurisdiction issue. Benetech is a clear line. Benetech says if the court has already invalidated the patent, you can't moot that with a covenant not to sue. There's lots of discussion about reasons for that that include investment of time and resources. But the line is clear. It's the patent's already been invalidated. What's lacking in this case is any identified conduct of News Corp. There's no actual dispute as between Blaze and News Corp. because there's no identified conduct of News Corp. It's the subject of a plea. I think we have the positions of both sides well vetted here. So we'll take the appeal under advisement. Thank both counsels. Thank you.